IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2024 Session

## LAURA MICHAEL HUDSON v. STEVEN BRIAN HUDSON

**Appeal from the Circuit Court for Montgomery County**
**No. CC-2021-CV-1578     Kathryn Wall Olita, Judge**

_____

**No. M2023-00879-COA-R3-CV**

_____

In this divorce case, Husband/Appellant appeals the trial court's: (1) classification of the marital residence as marital property; (2) decision not to admit Tennessee Rule of Evidence 1006 summaries tendered by Husband; (3) finding of criminal contempt against Husband; (4) award of transitional alimony to Wife; and (5) award of a portion of Wife's attorney's fees and costs as alimony in solido.  Wife asks for attorney's fees and costs on appeal.  We affirm the trial court's order.  Wife's request for appellate attorney's fees is granted

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Mark R. Olson, Clarksville, Tennessee, for the appellant, Steven Brian Hudson.

Roger A. Maness, Colleen Ann Hyder, and Michael Kenneth Williamson, Clarksville, Tennessee, for the appellee, Laura Michael Hudson.

## OPINION

### I. Background

Appellee Laura Michael Hudson ("Wife") and Appellant Steven Brian Hudson ("Husband") were married on August 25, 2008. One child, Lily, was born to the marriage in November 2008. Wife has an adult son from a previous relationship.

Husband owns and operates two businesses, which were in operation prior to the marriage. He is a licensed bail bondsman operating as Freebird Bonding Company, Inc. ("Freebird"), an S-Corporation of which he is the president and sole shareholder. He also holds a contractor's license and does business as H & H Construction, Inc.

Wife is an esthetician; she is licensed by the State of Tennessee and is also certified to perform paramedical procedures. From 2008 to 2015, Wife was primarily a stay-at-home mom. In 2015, the parties started Skin Logics, Inc. Both Husband and Wife were involved in the formation of the corporation, and Husband served as registered agent for a time. In 2018, the parties opened So Fetch (together with Skin Logics, Inc., "Wife's businesses"), a boutique selling contemporary clothing and accessories for women.

During the marriage, the parties resided at 117 Highway 149 East. On April 14, 2008, Husband alone signed a purchase agreement to purchase the property for $365,000.00. However, the sellers did not deed the property to Husband until 2011; the deed was recorded on August 1, 2011. Based on the parties' stipulation, the trial court determined the value of the marital residence to be $679,000.00 with approximately $179,293.03 remaining on the mortgage and HELOC at the time of trial. The trial court held that the marital residence was transmuted into marital property and ultimately awarded the asset to Wife.

On May 26, 2021, Wife filed a complaint for divorce in the Stewart County Chancery Court. On May 28, 2021, the trial judges in the 23rd Judicial District recused themselves. The case was transferred to the Montgomery County Circuit Court ("trial court"). On June 1, 2021, Husband filed an answer and a counter-complaint for divorce. On July 23, 2021, the trial court entered an interim order on the custody of Lily. As relevant here, the trial court enjoined both parties from "having any paramour at the residence or any other adult friend who is not prior known to the children . . . ." On March 23, 2022, the trial court entered an order on several pending motions. The trial court: (1) ordered Husband to pay Wife's pendente lite attorney's fees in the amount of $30,000.00 within ten (10) days; (2) increased the Husband's temporary support obligation from $2,000.00 per month to $5,000.00 per month; and (3) confirmed Husband's obligation to make Wife's car payment. On April 5, 2022, Wife filed a motion for contempt based on Husband's alleged failure to comply with the trial court's March 23, 2022 order. By order of May 13, 2022, the trial court: (1) denied Wife's motion for contempt; (2) reaffirmed Husband's $30,000.00 attorney fee obligation; (3) reduced Wife's temporary support to $2,000.00 per month pending her production of certain financial records; and (4) reaffirmed its prior order regarding Wife's car payments.

On July 20, 2022, Wife filed a supplemental motion for criminal and civil contempt asserting, *inter alia*, that Husband was living with his paramour in the same home with the child in violation of the trial court's July 23, 2021 order. On October 17, 2022, the trial court entered an order awarding Wife a judgment against Husband for unpaid car payments

totaling $16,673.43; the trial court also reiterated that Lily was not to spend any time with Husband's girlfriend during the pendency of the matter. On October 18, 2022, Wife filed a supplemental motion for criminal and civil contempt pointing out that the Husband continued to defy the trial court's order pertaining to paramours.

The case was heard on March 20, 21, and 22, 2023. While questioning Wife, Husband's attorney attempted to introduce summaries that purported to analyze Wife's business checking accounts and to distinguish personal from business expenditures. The trial court granted Wife's attorney's objection and denied the documents on the ground that Husband could not lay a foundation. The documents were marked for identification, but Husband did not make an offer of proof.

On May 18, 2023, the trial court entered its memorandum and final order, declaring the parties divorced. The trial court: (1) adopted a parenting plan agreed to by the parties on the first day of trial; (2) found Husband in civil and criminal contempt based on his violation of the paramour injunction; (3) awarded money judgments and attorney's fees to Wife as civil contempt sanctions; (4) ordered Husband to serve two days in jail for his criminal contempt; (5) found Wife guilty of one count of civil contempt and fined her $50.00; (6) found that the Highway 149 East property was transmuted into marital property; (7) equitably divided the marital property; (8) awarded Wife transitional alimony of $2,000.00 per month; and (9) awarded Wife attorney's fees and costs as alimony in solido.

In June 2023, Husband filed several post-judgment motions under Tennessee Rules of Civil Procedure 52, 59, and 62. On June 20, 2023, Wife filed a motion to alter or amend, seeking to increase the attorney's fees awarded to her. On July 10, 2023, Wife filed another motion for civil contempt, alleging, *inter alia*, that Husband failed to pay his support obligations. On July 27, 2023, the trial court entered orders denying Husband's motions. On the same day, the trial court entered separate orders on Wife's motion to alter or amend, wherein it clarified that Wife would be awarded a $67,000.00 judgment for attorney's fees (thus modifying its May 18, 2023 order). The trial court also granted Wife a writ of possession for the marital residence. On October 25, 2023, Wife filed a Tennessee Rule of Civil Procedure 60 motion asking the trial court to amend its May 18, 2023 order to divest the marital residence from Husband or to compel Husband to execute a quitclaim deed in her favor. By order of November 14, 2023, the trial court granted Wife's Rule 60 motion. Husband appeals.

## II. Issues

Husband raises the following issues as stated in his brief:

1. Designation of 117 Hwy., 149 East as Marital Property was an error.
2. Failure to Admit Summaries was an error.

3. An Award of Alimony was an error.
4. The Finding of Criminal Contempt was an error.

In the argument section of his brief, Husband discusses the trial court's award of attorney's fees and costs to Wife. However, the award of attorney's fees is not set out as a specified issue. Tennessee Rule of Appellate Procedure 27(a) addresses the content of appellant briefs. The Rule clearly distinguishes between the statement of the issue section of the brief and the argument section. Appellants are required to include both "[a] statement of the issues presented for review," Tenn. R. App. P. 27(a)(4), and "[a]n argument . . . setting forth: (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief . . . ." Tenn. R. App. P. 27(a)(7). Although Husband's brief fails to comply with the requirements of Rule 27(a), Tennessee Rule of Appellate Procedure 2 affords us the discretion to suspend the briefing requirements. *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009). In the interest of full adjudication of this appeal, we will exercise our discretion to substantively review the trial court's award of attorney's fees and cost to Wife as alimony in solido.

Wife raises the additional issue of whether she is entitled to an award of attorney's fees and costs incurred in defense of this appeal.

### III. Standard of Review

We review a non-jury case "de novo upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed de novo and "are accorded no presumption of correctness." *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008).

Furthermore, in its May 18, 2023 order, the trial court found that some of the testimony given by the parties was not truthful. Concerning credibility determinations, this Court has stated:

> When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. Further, "[o]n an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings."

*In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair*

*Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)). Accordingly, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *Id*.

## IV. Analysis

### A. Classification of 117 Highway 149 East as Marital Property

From his brief, Husband appeals the classification of the marital residence as marital property, but he does not take issue with the trial court's equitable division of marital property. Therefore, we will limit our review to the trial court's classification of the Highway 149 East property. "Tennessee is a 'dual property' state, as our divorce statutes distinguish between marital and separate property." *Glover v. Glover*, No. W2010-00331-COA-R3-CV, 2010 WL 2977922, at *3 (Tenn. Ct. App. July 30, 2010) (citing *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988)). Accordingly, a trial court's classification of assets as either marital or separate is "an important threshold matter because courts do not have the authority to make a distribution of separate property." *Summer v. Summer*, 296 S.W.3d 57, 60 (Tenn. Ct. App. 2008). Whether property is marital or separate is an inherently factual question, thus, we review a trial court's classification of property in a divorce de novo with a presumption of correctness unless the evidence preponderates against it. *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983); Tenn. R. App. P. 13(d)).

Tennessee Code Annotated section 36-4-121 governs a court's classification of property as either marital or separate. The Tennessee General Assembly has amended this statute since Wife filed the complaint for divorce on May 26, 2021. The relevant iteration of the statute in this appeal is the July 2017 through March 2022 version, which was in place at the time Wife filed the complaint. At that time, Tennessee Code Annotated section 36-4-121(b)(1)(A) defined "marital property," in relevant part, as "all real and personal property . . . acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36-4-121(b)(1)(A). "Separate property" was defined, in relevant part, as "[a]ll real and personal property owned by a spouse before marriage[,]" Tenn. Code Ann. § 36-4-121(b)(2)(A), as well as "[p]roperty acquired by a spouse at any time by gift[.]" Tenn. Code Ann. § 36-4-121(b)(2)(D). Importantly, there are instances where the separate property of a spouse becomes part of the marital estate "due to the parties' treatment of the separate property." *Eldridge v. Eldridge*, 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). This Court has previously explained that transmutation "occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property." *Id*. (quoting *Batson*, 769 S.W.2d at 858).

In its May 18, 2023 order, the trial court made the following findings concerning the Highway 149 East property:

31. The home used as the marital residence was purchased in 2008. Specifically, Wife testified that after she found out she was pregnant in February of 2008, the parties got engaged and started looking for houses. Both wanted to find a home [] between Houston County and Montgomery County. When they looked at the property located at 117 Highway 149 E, they both liked it and liked the area. The Court finds that the intent of purchasing 117 Highway 149 E was to use the property as the marital home. Husband alone signed a purchase agreement with the sellers on April 14, 2008 to purchase the property for $365,000.00. However, the sellers did not deed the property to Husband until 2011, during the marriage. The deed was recorded on August 1, 2011. A Deed of Trust was simultaneously prepared and it references a promissory note in favor of the sellers, but no promissory note has ever been produced.

Then, in January of 2014, both parties executed a Deed of Trust in favor of F & M Bank. On March 6, 2017, both parties signed as "owners" of the property on another Deed of Trust in favor of Regions Bank. A second Deed of Trust to Regions was signed on March 20, 2017. Only Husband signed the Promissory Note connected to the Deed of Trust.

32. The parties moved into the home in April of 2008. They were thereafter married on August 25, 2008. Lily was born in November of 2008 and the family used the residence as their family home until the parties split in May of 2021. Over the years, the parties made many improvements to the home, including the addition of a pool and fence, rock gate and concrete entrance, sidewalks, a new roof, full inside renovation including the kitchen cabinets and appliances, floors, doors, exterior doors, blinds, granite inside, new siding and termite remediation. Wife did not financially contribute to these improvements, though Husband acknowledges that she was responsible for picking everything out and was involved in the process.

33. The parties have stipulated to the appraised value of the marital residence at $679,000.00 with approximately $179,293.03 due and remaining on the mortgage and HELOC as of the time of trial. The Court finds the marital residence has $499,706.97 in equity.

***

Husband disputes that the residence is marital property. He asserts that because he alone bought the property a few months before the marriage and because Wife was never on a deed or made any payments to indebtedness or taxes, she is not entitled to any bit of this property. The Court disagrees.

- 6 -

Separate property can become marital property either through commingling or transmutation. Even if an asset is clearly separate property, the increase in the asset's value during the marriage and the income from the asset may be considered marital property if the nonowner spouse contributed substantially to the asset's preservation and appreciation. Tenn. Code Ann. § 36-4-121(b); *Cohen v. Cohen*, 937 S.W.2d 823, 832-33 (Tenn.1996); *Harrison v. Harrison*, 912 S.W.2d 124, 127 (Tenn.1995). Contributions to the preservation or appreciation of a separate asset will be considered "substantial" if they are real and significant. *Mitts v. Mitts*, 39 S.W.3d 142, 145 (Tenn. Ct. App . 2000); *Brown v. Brown*, 913 S.W. 2d 163, 167 (Tenn. Ct. App . 1994). Transmutation of a separate asset into a marital asset occurs when the separate asset is jointly titled **or when the parties use it in support of the marriage or in some other manner that demonstrates the parties' intent to make the asset marital property**. (emphasis supplied by the Court). *Langschmidt v. Langschmidt*, 81 S.W.3d [741,] at 747 [(Tenn. 2002)]; *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn.Ct.App.1988).

Though the property was purchased by Husband approximately four (4) months before the parties married, in 2011 a new Deed of Trust was prepared, signed by both parties, evidencing ownership of them both as Grantors. While Wife may not have been ultimately indebted on the property as Husband was, the Deed of Trust signed on August 1, 2011, is signed by her and initialed on each and every page. Further, all of the payments on the mortgage indebtedness were made during the marriage using income earned during the marriage. The parties lived in and treated the home as their marital residence. Many improvements were made over the years and Wife was the one responsible for picking everything out. She also raised two wonderful children and maintained the home while Husband worked long and irregular hours. These contributions by Wife are real and significant and not in dispute by Husband. The Court finds the parties have used this home in support of the marriage and their actions demonstrate their intent to make the asset marital property. The property is marital property.

(Citations to record omitted).

Husband's argument (at trial and on appeal) is that the parties maintained separate financial lives. As it concerns the Highway 149 East property, Husband contends that earnings from his businesses were used to purchase and maintain the property, and Wife made no financial contributions to the property to transmute it into marital property. Indeed, from the foregoing findings, the trial court's holding that the Highway 149 East property was transmuted to marital property rests largely on the fact that Wife made significant intangible contributions to the running of the household. In this regard, Husband's argument overlooks Tennessee Code Annotated sections 36-4-121(c)(3), and

(c)(5) which state that, "in making equitable division of marital property, the court shall consider":

> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

> \*\*\*

> (5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role[.]

In its May 18, 2023 order, the trial court considered the foregoing factors, finding, in relevant part, that:

> Husband's businesses have thrived over the years and during the course of this marriage. He has been able to earn a significant income through both Freebird and H & H.

> Wife was a stay at home mom when the children were young and her contribution to Husband's success was intangible in the form of caring for them and attending to their daily needs while he worked nights and irregular hours. She was responsible for their transportation and cooked the family's meals every day. Wife testified that Husband's bail bonding business kept him gone all hours of day and night and that he was gone a lot. Meanwhile, she was home caring for the children and the home. Husband's testimony confirmed that this was Wife's role and that he intended for it to be that way. The Court finds Wife's intangible contributions to this marriage to be significant.

> \*\*\*

> Both Husband and Wife contributed to the acquisition, preservation, and appreciation of the marital assets during the marriage Husband was the primary income-earner through his employment, while Wife stayed home or worked part-time. Husband's contributions, then, have been primarily financial and Wife's have been more intangible. Wife's contribution as a stay at home mom while the children were young allowed Husband to keep the busy schedule of a bail bondsman, which allowed him to earn for the family. His earning then allowed for the acquisition of assets during the marriage.

- 8 -

Husband would have this Court disregard this factor altogether. Instead, Husband would have the Court focus only on the fact that the properties acquired during the marriage were in his name only and that Wife did not make any financial contributions toward the properties or the taxes on the same.

The record supports the trial court's findings. Wife made significant contributions to the household and, in fact, ran the household and raised two children while Husband worked. Furthermore, to the extent Husband attempted to diminish the Wife's intangible contributions, the trial court found that his testimony was not credible. *In re M.L.P.*, 228 S.W.3d at 143 ("When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings.").

Concerning transmutation, this Court has outlined common factors considered when determining whether a home owned by one spouse prior to marriage should be deemed marital property:

> Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property. Accordingly, our court has classified separately owned real property as marital property when the parties agreed that it should be owned jointly even though the title was never changed, or when the spouse owning the separate property conceded that he or she intended that the separate property would be converted to marital property.

*Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *5, (Tenn. Ct. App. Sept. 1, 2006) (citing *Cronin-Wright v. Wright*, 121 S.W.3d 673, 675 (Tenn. Ct. App. 2003)). However, "the ultimate test [for transmutation] is how the property was treated by the parties." *Strickland v. Strickland*, No. M2012-00603-COA-R3-CV, 2012 WL 6697296, at *18 (Tenn. Ct. App. Dec. 21, 2012) (citing *Langschmidt*, 81 S.W.3d at 747; *Fox*, 2006 WL 2534507, at *5). Here, the record supports the trial court's findings that, although Husband purchased the disputed property approximately four months before the parties were married, it was always intended to be used as the marital residence. Wife ultimately signed the deed of trust, and all the mortgage payments were made during the marriage using income earned by Husband during the marriage, while Wife ran the household and raised the children. The parties treated the property as their marital home and engaged in several improvements to the property during the marriage. From our review, the evidence does not preponderate against the trial court's finding that the Highway 149 East property was transmuted into marital property based on how the parties

treated that property.  *Strickland*, 2012 WL 6697296 at *18.

**B. Summaries**

One of Husband's theories at trial was that Wife took significant money from business accounts for payment of her personal expenses.  Given the volume of the receipts evidencing the alleged withdrawals, Husband tendered summaries prepared pursuant to Tennessee Rule of Evidence 1006, which provides that

> [t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals or duplicates shall be made available for examination or copying, or both, by other parties at reasonable times and places. The court may order that they be produced in court.

As this Court has explained,

> Rule 1006 operates as an exception to the best evidence rule by allowing a party to admit a summary of originals rather than the burdensome production of "voluminous writings, recordings or photographs which cannot conveniently be examined in court." Tenn. R. Evid. 1006. For the summary to be admissible, the party seeking admission must lay the proper foundation, consisting of testimony that "(1) the original evidence is voluminous, and (2) the summary is sufficiently accurate in representing the original evidence." Neil P. Cohen et al., Tennessee Law of Evidence, § 10.06(3) at 10-21 (4th ed. 2000).

*Ward v. Ward*, No. W2001-01078-COA-R3-CV, 2002 WL 31845229, *4 (Tenn. Ct. App. Dec. 19, 2002).  Here, the proffered summaries purport to analyze Wife's business checking accounts and to distinguish personal from business expenditures. At trial, Husband's counsel attempted to admit them through Wife's testimony but was unable to lay a foundation.  When Husband's attorney suggested that he would be able to introduce the summaries through Husband's testimony, the trial court cautioned:

> THE COURT: —it's unlikely that [Husband] has personal knowledge to specifically testify as to each of these purchases [outlined in the summaries], so. . .
> MR. OLSON [Husband's attorney]: Don't disagree. The only thing that I would ask him to do—for example, he went through and what he highlighted is every time there's an Arby's, Kroger, that type of thing, we are—
> THE COURT: And to the extent that he doesn't know whether that was a business lunch for her staff or her running out to get something for [the children], unless he has personal knowledge of it, he will not be allowed to

testify as to the classification of it . . . . It's speculation on his part. He's not—
he wasn't there when these items were spent. You know, you can argue. . .
what you want in the end as to any inferences this Court should take from the
spending.

MR. OLSON: Sure.

THE COURT: [Wife has] acknowledged it's not all business, but he doesn't
get to just go through her bank statements and testify with certainty, which
he doesn't have, as to how it should be classified.

Despite Husband's attorney's indication that he would attempt to introduce the summaries through Husband's testimony, our review of that testimony shows that there was no attempt to do so. "Issues regarding admission of evidence in Tennessee are reviewed for abuse of discretion." *DeLapp v. Pratt*, 152 S.W.3d 530, 538 (Tenn. Ct. App. 2004) (citing *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001)). "[T]rial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant." *Dickey*, 63 S.W.3d at 723. "A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Tenn. Farmers Mut. Ins. Co. v. DeBruce*, 586 S.W.3d 901, 905 (Tenn. 2019) (quoting *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). "We presume that the trial court's discretionary decision is correct, and we review the evidence in the light most favorable to the trial court's decision." *Id.* Here, there is a legitimate basis for the trial court's decision to exclude Husband's summaries. He did not lay a proper foundation. *Ward*, 2002 WL 31845229, at *4. Accordingly, there is no abuse of discretion in the trial court's decision.[1]

### C. Criminal Contempt

Husband asserts that the trial court erred in finding him in criminal contempt for failure to abide by the trial court's "no paramour" mandate. In its May 18, 2023 order, the trial court held:

There is no dispute that this Court ordered both parties to refrain from having paramours around the children. (July 23, 2021 Order, ¶ 7). Husband testified that he probably had Robin Ross over "more than I should have." He did not deny that the children are always there when Robin Ross comes over. . . . On September 16, 2022, this Court reiterated, in open court, that the parties were to keep paramours away from the children and that "any further violations of the order will result in a contempt finding against [Husband]." Not only was

---

[1] Even if we allow, *arguendo*, that the trial court erred in not admitting Husband's summaries, Husband failed to preserve this issue for review by making an offer of proof. Tenn. R. Evid. 103(a)(2).

there a lawful, clear & unambiguous order, there was a warning given about violating the order. After this warning, Husband and Ms. Ross and her children continued to spend time in the Hudson home, with the children present. During Fall Break, Husband and Ms. Ross and her children and the Hudson children went on a trip to . . . Kentucky. This Court is left with no option but to believe, and the Court does believe, that Steven Hudson simply did not care about this Court's order or its authority. He was going to do what he wanted to do, regardless of the order of the Court. This is willful criminal contempt beyond and reasonable doubt and the Court finds Steven Hudson guilty of the same.

Based on the foregoing findings, the trial court ordered Husband to be incarcerated for two days.

Concerning criminal contempt, the Tennessee Supreme Court has explained that,

[t]hough criminal contempt has been regarded as a "crime" for some purposes, *see Black* [*v. Blount*, 938 S.W.2d 394, 402 (Tenn. 1996)], criminal contempt proceedings

are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court. In punishing contempt, the Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings.

*Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 800 [ ] (1987)).

*Baker v. State*, 417 S.W.3d 428, 438 (Tenn. 2013). Sanctions for criminal contempt are "both punitive and unconditional in nature, designed to punish past behavior, not to coerce directly compliance with a court order or influence future behavior." *Id.* at 436.

Before reviewing the trial court's findings, we first note that Husband has largely failed to brief this issue. His entire "argument" on the subject of criminal contempt is as follows:

Criminal contempt must be proven beyond a reasonable doubt. The evidence did not constitute a showing of guilt beyond a reasonable doubt.

In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable

doubt. ***Robinson***, 377 S.W.2d at 912.

***Black v. Blount***, 938 S.W.2d 394, 398 (Tenn.,1996).

The discussion of the evidence entered against Mr. Hudson, demonstrates that only three people had any knowledge about anything that took place. Clearly, at some point, a lady name[d] Robin Ross, now Mr. Hudson's wife, stated [sic] his home. However, the proponent has failed to demonstrate that the actions took place, in violation of the specific order. A review of the evidence demonstrates, no specific demonstration of when a criminal action took place. Based on the foregoing, the criminal contempt citation must fail.

Tennessee Rule of Appellate Procedure 27(1)(7) governs the content of appellate briefs, and states that the appellant's brief "shall contain"

[a]n argument, which may be preceded by a summary of argument, setting forth: (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)[.]

The foregoing section of Husband's brief does not satisfy this criterion. Nonetheless, Husband contends that the finding of criminal contempt was error because the specifics of Ms. Ross' involvement with the children was not proven. In the "Facts Related to the Finding of Criminal Contempt" section of his brief, Husband states:

Evidence was taken, related to one individual, Robin Ross, who was a girlfriend to Mr. Hudson. Mrs. Ross is now Mrs. Hudson, having married Steve Hudson. A contempt motion was provided, related to Mrs. Ross being around the minor children. However, the specific times were not est. [we assume Husband means "established" by "est."] nor was it est. that the contact was not in his public place, when the order was in place. As result, the motion must fail, as it was not proven, based upon the beyond a reasonable doubt standard.

Respectfully, the exact times, places, and length of Ms. Ross' contact with the children did not have to be established for the trial court to find that Husband violated the "no paramour" mandate. Regardless, in the fact section of his brief, Husband states "that occasionally Ms. Ross would spend the night." So, there is no dispute (even by Husband's own statement of the facts) that Ms. Ross stayed overnight with Husband while the children were present.

- 13 -

There is also no dispute that Ms. Ross spent time with the children on trips and at Husband's residence. Accordingly, there is sufficient evidence to support the trial court's finding that Husband was in criminal contempt for failure to comply with the trial court's paramour injunction.

### D. Transitional Alimony

Tennessee Code Annotated section 36-5-121(a) provides that in any action for divorce, a "court may award alimony to be paid by one spouse to or for the benefit of the other[.]" Tenn. Code Ann. § 36-5-121(a). Trial courts have broad discretion in awarding spousal support, **Bratton v. Bratton**, 136 S.W.3d 595, 605 (Tenn. 2004), and this Court is "disinclined to second-guess a trial judge's spousal support decision" absent a trial court's abuse of discretion. **Kinard v. Kinard**, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is clearly unreasonable. **Bogan v. Bogan**, 60 S.W.3d 721, 733 (Tenn. 2001) (citing **Overstreet v. Shoney's, Inc.**, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

Here, the trial court found that

> Wife is the economically disadvantaged spouse. The expenses she has identified are not unreasonable and there will likely be a period of transition for her related to the award of the marital residence to her. The Court finds that it is necessary for the Wife to receive support on a temporary basis in order to adjust to the consequences of this divorce.

Husband does not dispute the finding that Wife is the economically disadvantaged spouse. "Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award." **Perry v. Perry**, 114 S.W.3d 465, 467 (Tenn. 2003). Under Tennessee Code Annotated section 36-5-121(d)(1), "[t]he court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido . . . ." Tenn. Code Ann. § 36-5-121(d)(1). The General Assembly has expressed a preference for rehabilitative alimony to allow "a spouse, who is economically disadvantaged relative to the other spouse, [to] be rehabilitated, whenever possible[.]" Tenn. Code Ann. § 36-5-121(d)(2). For a spouse to be rehabilitated, he or she must

> achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

- 14 -

Tenn. Code Ann. § 36-5-121(d)(2); *see also* Tenn. Code Ann. § 36-5-121(e)(1). In its order, the trial court acknowledged the Tennessee Legislatures' preference for an award of rehabilitative alimony, but ultimately held that

> Wife cannot, in a reasonable amount of time, achieve an earning capacity that would permit her standard of living after the divorce to be reasonably comparable to that enjoyed during the marriage, or to the post-divorce standard of living expected to be available to Husband. T.C.A. § 36-5-121(d)(2). Wife has been trained and educated in her field and now has several years of experience through her business. She testified she is happy with her level of education. Therefore, the Court finds that rehabilitation is not appropriate or necessary in this case.

Husband does not dispute this finding. From the record, we agree with the trial court's conclusion that Wife cannot be rehabilitated insofar as she has the education and skills necessary to perform her work as an esthetician. However, she will not be able to achieve the same standard of living that the parties enjoyed during their marriage. Therefore, transitional alimony is appropriate in this case. Indeed, courts may award transitional alimony "when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce[.]" Tenn. Code Ann. § 36-5-121(d)(4); *see also* Tenn. Code Ann. § 36-5-121(g)(1). In relevant part, Tennessee Code Annotated section 36-5-121 provides:

> (g)(1) Transitional alimony means a sum of money payable by one (1) party to, or on behalf of, the other party for a determinate period of time. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

In awarding Wife transitional alimony of $2,000.00 per month for a period of thirty-six months, the trial court reasoned:

> The Court does find [] that Wife (the economically disadvantaged spouse) needs assistance to adjust to the economic consequences of this divorce. . . . The Court finds that the award of transitional alimony provided for herein will assist Wife, who certainly possesses the capacity for self-sufficiency, but needs financial assistance in adjusting to the economic consequences of maintaining a household without the benefit of Husband's income.

Transitional alimony, like the other forms of alimony is to be awarded by a trial court only after considering the factors found at Tennessee Code Annotated sections 36-5-121(i)(1)-

- 15 -

(12). As the Tennessee Supreme Court has explained, "in determining the nature, amount, length of term, and manner of payment," trial courts are required to consider all relevant factors set forth in Tennessee Code Annotated Section 36-5-121(i). All relevant statutory factors are to be considered by the trial court, but "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 110 (Tenn. 2011) (quoting ***Riggs v. Riggs***, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)).

In its May 18, 2023 order, the trial court considered the relevant statutory factors set out below and made the following findings (in bold font):

- The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources. Tenn. Code Ann. § 36-5-121(i)(1).

  **Husband has been the primary income-provider for the majority of this marriage. From 2008 – 2015, Wife primarily was a stay-at-home mom and homemaker. She cared for [the children], as well as maintained the home. She cooked daily and was primarily responsible for the children's transportation. She would occasionally provide as-needed services for paramedical service providers such as Medi-Skin/Joy White and Bella Medical Spa. No evidence was presented as to her income during these years, and the parties do not dispute that Wife's primary role was a mom and homemaker. Wife testified, "he worked and I took care of the kids." Husband testified he worked specifically so that she could stay home.**
  **As set forth above, the Court finds that Wife has the capacity to earn more than the $800 per week she is paying herself out of the business and benefits from being the owner of So Fetch/Skin Logics. Husband also has the capacity to earn significantly more than he currently reports through his two businesses. The Court finds Wife has established a need of $5,533.00 per month, excluding attorney's fees, and that she is the economically disadvantaged spouse.**

- The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level. Tenn. Code Ann. § 36-5-121(i)(2).

  **Wife is satisfied with her career and training. She runs a business that is based upon her training, education and experience and testified that business is improved with the addition of new medical weight loss products. Wife did not testify to any additional education or training**

**needed to continue in her business endeavors.**

**Likewise, Husband has been in the construction and bail bonding industries for many years. He has two successful businesses as a result and has a much greater earning capacity than Wife when historical earnings are considered.**

- The duration of the marriage. Tenn. Code Ann. § 36-5-121(i)(3).

  **This is a middle duration marriage — 14 years.**

- The age and mental condition of each party. Tenn. Code Ann. § 36-5-121(i)(4).

  **Wife is young and no evidence was presented as to any mental condition. Husband is a decade older than Wife and maintains his recovery from drug addiction with Methadone taken every other day. No evidence was presented as to any mental condition he may have.**

- The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease. Tenn. Code Ann. § 36-5-121(i)(5).

  **Wife is physically healthy. Husband maintains his recovery from drug addiction with Methadone taken every other day. No medical evidence of any chronic debilitating disease was presented. Both parties are gainfully employed.**

- The separate assets of each party, both real and personal, tangible and intangible. Tenn. Code Ann. § 36-5-121(i)(7).

  **Husband leaves this marriage with substantial separate assets. Wife did not come into the marriage with separate assets and is not leaving with any either.**

- (8) The provisions made with regard to the marital property, as defined in § 36-4-121. Tenn. Code Ann. § 36-5-121(i)(8).

  **Wife has been awarded a slightly larger share of the marital property and the Court finds that this is an equitable division.**

- (9) The standard of living of the parties established during the marriage. Tenn. Code Ann. § 36-5-121(i)(9).

**The parties have enjoyed a very comfortable standard of living.**

- The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party. Tenn. Code Ann. § 36-5-121(i)(10).

   **Both parties have made contributions to the marriage. During the marriage, Husband's contributions have been primarily financial and Wife's have been more intangible in caring for the parties' children and home.**

- The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so. Tenn. Code Ann. § 36-5-121(i)(11).

   **Based upon the facts set forth above, both parties share fault in the demise of this marriage. The Court does not rely upon this factor in making the alimony determination.**

From his brief, Husband rests his argument concerning the award of transitional alimony on three allegations. First, Husband contends that Wife is not entitled to transitional alimony based on "unclean hands." As correctly noted by Appellee in her brief, in divorce cases, the doctrine of unclean hand applies only when there has been fraud and deceit upon the court. ***Chastain v. Chastain***, 559 S.W.2d 933, 935 (Tenn. 1977) (citations omitted). As evidence to support his theory, Husband cites several of Wife's trial court filings, various tax returns, and portions of the transcript. He then asserts that these pieces of evidence, when viewed together, show a pattern of inconsistency that can only mean Wife lied about her income. We disagree. Although the evidence cited by Husband shows inconsistent earnings and income from Wife's businesses, the nature of the businesses (and not Wife's "unclean hands") creates the discrepancies. Wife's businesses largely depend on customer demand, which ebbs and flows. Thus, the stream of income varies greatly, and this variation bears on the amount of income Wife can take from the businesses. These are logical inferences and are based on the entire picture painted by the evidence.

Husband also contends that Wife's fault (specifically, her infidelities) should bar the award of transitional alimony. Husband's argument overlooks the fact that the trial court did not rely on the fault factor, *i.e.* Tenn. Code Ann. §36-5-121(i). As set out in context above, the trial court found "both parties share fault in the demise of this marriage." The trial court then specifically stated that, "The Court does not rely upon this factor in making the alimony determination."

Finally, in the argument section of his brief, Husband asserts that Wife should be

judicially estopped from receiving alimony. Specifically, Husband states that, "[W]ife has taken such alternative positions, it is appropriate that the doctrine of judicial estoppel be applied. She cannot benefit, from her submitting different amounts of income to different parties. Further, as the income tax returns of her business demonstrate, they had very significant income."  Husband's reliance on the doctrine of judicial estoppel is misplaced.

Under the doctrine of judicial estoppel, "a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts . . . ." ***Kershaw v. Levy***, 583 S.W.3d 544, 548 (Tenn. 2019). Judicial estoppel only applies when "a party has attempted to contradict by oath a sworn statement previously made." ***Id.*** (quoting ***Cracker Barrel Old Country Store v. Epperson***, 284 S.W.3d 303, 315 (Tenn. 2009)).  However, "The doctrine of judicial estoppel does not apply when there is 'an innocent inconsistency or apparent inconsistency that is actually reconcilable.'"  ***Id.*** at 549 (quoting 28 Am. Jur. 2d Estoppel and Waiver § 68 (footnote omitted)).  As discussed above, any inconsistencies in Wife's income statements can be explained by the nature of her businesses.  Thus, the inconsistencies are "reconcilable," and the doctrine of judicial estoppel does not apply.

Husband's arguments are unpersuasive.  In awarding Wife transitional alimony, the trial court did not rely on any one factor.  Rather, the trial court made findings concerning the statutory factors it deemed relevant. From our review, there is ample evidence to support the trial court's findings on these factors.

### E. Attorney's Fees as Alimony in Solido

Wife claims that she incurred trial attorney's fees in excess of $160,000.00, and these amounts are evidenced by her attorney's affidavits.  The trial court awarded Wife a total of $97,000.00 of those fees. As the Tennessee Supreme Court has explained,

> [i]t is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. *See* Tenn. Code Ann. § 36-5-121(h)(1) ("alimony in solido may include attorney fees, where appropriate"); ***Herrera v. Herrera***, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). . . . As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. ***Umstot v. Umstot***, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *see* ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), or the spouse would be required to deplete his or her resources in order to pay them, *see*

*Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony. *See id*. at 185.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011). As noted above, trial courts have broad discretion in awarding spousal support, *Bratton*, 136 S.W.3d at 605, and this Court will not disturb a trial court's spousal-support decision absent an abuse of discretion. *Kinard,* 986 S.W.2d at 234.

For many of the reasons previously discussed, including Wife's earning potential, the nature of her businesses, the trial court's division of the marital estate, and Husband's ability to earn significantly more income than Wife, there is sufficient evidence to support the trial court's award of a portion of Wife's attorney's fees as alimony in solido.

### F. Wife's Appellate Attorney's Fees

Finally, Wife asks this Court to award her attorney's fees incurred on appeal. In Tennessee, "litigants are responsible for their own attorney's fees absent a statute or agreement between the parties providing otherwise." *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000)). However, Tennessee Code Annotated section 36-5-103(c) allows this Court, in its discretion, to award attorney's fees in any proceeding "to enforce alter, change, or modify any decree of alimony[.]" Tenn. Code Ann. § 36-5-103(c); *see also Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). Because this appeal involves Husband's challenge to the trial court's award of transitional alimony and alimony in solido, this Court has discretion to award Wife appellate attorney's fees under the foregoing statute. "In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." *In re C.W.*, 420 S.W.3d 13, 22 (Tenn. Ct. App. 2013) (citing *Darvarmanesh*, 2005 WL 1684050, at *16). Because we have affirmed the trial court's award of transitional alimony and its award of Wife's attorney's fees at trial, Wife is the prevailing party on the issue of her alimony award. Given Wife's success on this issue and in view of the income disparity between the parties, we conclude that Wife is entitled to an award of attorney's fees on appeal, and her request for same is granted.

### V. Conclusion

For the foregoing reasons, the trial court's order is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion, including, but not limited to, the calculation of Wife's reasonable attorney's fees and expenses incurred in defending this appeal, and entry of judgment on same. Costs of the appeal are assessed to the Appellant, Steven Brian Hudson. Execution for costs may issue if necessary.

_s/ Kenny Armstrong_
KENNY ARMSTRONG, JUDGE